UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| MICHAEL SCUTERI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:24-cv-00424-JPH-MG |
| | ) |
| HEATHER RUSSELL, et al., | ) |
| | ) |
| Defendants. | ) |

**ORDER DENYING MOTIONS FOR EMERGENCY PRELIMINARY INJUNCTION AND DISMISSING ACTION AS DUPLICATIVE**

Plaintiff Michael Scuteri originally filed this action in state court, alleging unconstitutional conditions of confinement at Putnamville Correctional Facility ("Putnamville"). Defendants removed the action to this Court on August 13, 2024. Dkt. 2. On October 28, 2024, Mr. Scuteri filed an "emergency motion for preliminary injunction," stating that the Putnamville administration was preparing to implement a variety of new rules governing the institution. Dkt. 44. In Mr. Scuteri's words, an injunction was necessary "to prevent imminent rioting and violence" that the new rules allegedly would cause. *Id.* Mr. Scuteri filed a substantially identical motion on October 31, 2024. Dkt. 58.

Given the gravity of Mr. Scuteri's allegations, the Court directed Magistrate Judge Garcia to hold a telephonic status conference in this case as soon as practicable to discuss the allegations. Dkt. 48. Magistrate Judge Garcia held two such conferences, on November 6 and November 26. Dkts. 63, 66. Defendants filed a brief and submission of evidence in opposition to Mr. Scuteri's motions,

1

dkt. 60, and Mr. Scuteri filed a reply, dkt. 69. For the reasons set forth below, the Court **DENIES** the motions for emergency injunctive relief.

## I. Background

Mr. Scuteri's complaint, as amended on September 3 and which has not yet been screened by the Court, alleges that the conditions of confinement at Putnamville are unconstitutional because of inadequate lighting, inadequate fans heating and ventilation, overcrowding, excessive noise, unsanitary conditions, lack of structural integrity; equal protection violations; denial of adequate healthcare; retaliation; denial of access to the courts; improper handling of disciplinary proceedings; intentional infliction of emotional distress; and inadequate food service. Dkt. 12.[1]

Mr. Scuteri's "emergency" injunction motions allege that effective November 1, Putnamville administration was going to implement new rules regarding the following:

- Required waking time of 6:45 a.m.
- Unnecessarily excessive lighting use
- No use of bathroom facilities between 11:30 p.m. and 4:00 a.m.
- Beds to be made by 7:15 a.m. and no sleeping allowed during the day with a bedtime of 9 p.m.
- No visiting or crossing over between the Putnamville A-Side and B-Side dorms

---

[1] As previously noted by the Court, these allegations are virtually identical to allegations made in a different lawsuit Mr. Scuteri filed directly in this Court, *Scuteri v. Indiana Department of Corrections et al.*, No. 2:24-cv-00316-JPH-MKK. *See* dkt. 41.

2

- No loitering (despite Putnamville already being locked down 23 hours a day)
- Windows may only be opened and closed by officers, despite inadequate ventilation in the building
- Hair cutting and shaving not allowed in the dorms, despite the lack of a usable barbershop at Putnamville
- Exercising prohibited in the dorms
- No washing clothes in dorms
- No plastic bags
- Nothing allowed on top of boxes in cells
- Limits on the amount of ice inmates can receive
- No talking in the dayroom
- Dayroom to be closed for cleaning between 8 and 10 a.m.

Dkt. 44 at 1-2; dkt. 58 at 1-2. In addition, Mr. Scuteri alleged that Putnamville administration planned to remove chairs from inmates' bunk areas, which are used by some inmates for medical reasons, to climb onto bunk beds, and/or for socialization. Dkt. 44 at 5; dkt. 58 at 5. Mr. Scuteri submitted as evidence in support of these motions several "requests for accommodation" under the Americans with Disabilities Act or Rehabilitation Act from various inmates. These requests are pre-printed with information citing the Rehabilitation Act, state "I request a chair for medical purposes," and are dated October 31 or November 1, 2024, or bear no date at all. *See* dkt. 59.

3

Defendants' brief and evidence in response to Mr. Scuteri's motions assert that, in fact, only two new rules or procedures were to be implemented at Putnamville on November 1. Dkt. 60 at 5; dkt. 60-1 at ¶ 8 (declaration of Warden Tricia Pretorius). First, about half of the chairs currently in the bed areas of the dormitories would be moved to the dayroom. Dkt. 60-1 at ¶ 8. As Warden Pretorius explains: "The high volume of chairs in the bed area was not conducive to ensuring required space between beds, made it unduly difficult for staff to conduct necessary property searches, and obscured staff members' view of incarcerated individuals' beds and bed areas." *Id.* at ¶ 9.

Second, Warden Pretorius stated that Putnamville originally planned to modify the late-night schedule for inmates, to require them to either be in bed or watching a movie by 9:30 p.m. *Id.* at ¶ 10. After receiving input from inmates about the proposed rule change, however, it was modified to allow additional late-night viewing of movies and sporting and other special events. *Id.* at ¶ 11.

Warden Pretorius also explained that Putnamville allows inmates to use the restroom facilities between 11:30 p.m. and 4:00 a.m. for using toilets or urinals, but not for other purposes such as personal hygiene. *Id.* at ¶ 13. Warden Pretorius also denies that any of the alleged "new" rules mentioned by Mr. Scuteri are in fact new, as opposed to being in place for several years. *Id.* at ¶ 14. She admits that Putnamville is in the process of constructing a new barbershop, but staff is being paid overtime to cut hair in the meantime. *Id.* at ¶ 17. She denies that Putnamville is in a permanent lock-down state and that inmates generally

4

have access to the dayroom and other facilities for more than one hour per day. *Id.* at ¶ 18.

Additionally, to the extent there were slight rule changes that took effect on November 1, they came after meetings between staff and "shelter representatives"—two inmates from each Putnamville housing unit who meet with staff monthly to discuss rules, policies, and procedures. *Id.* at ¶ 7.

Defendants' response did not directly address the issue of lighting at Putnamville. However, the Court notes that with respect to the facility rules regarding lighting, previously they had stated:

> All main lights will come on in the dormitories at 6:45 a.m. weekdays and 9:30 a.m. on weekends and holidays. The lights will remain on until 9:30 p.m. on weekdays and 11:30 on weekends and holidays. Main lights are considered to be the cubicle, latrine, hallway and game table lighting. The only exception would be the TV area lights, they may be dimmed slightly to decrease glare, allowing enhanced television viewing. All security lights will remain on at all times. Dorm lights can and will be turned on during any emergency or threats to safety and security.

Dkt. 60-3 at 4. The newly-revised rules state:

> All main lights will come on in the dormitories at 6:45 a.m. weekdays and 9:30 a.m. on weekends and holidays. The lights will remain on until 9:30 p.m. Sunday through Thursday. Dorm lights can and will be turned on during any emergency or for safety and security reasons.

Dkt. 60-2 at 2.

In Mr. Scuteri's reply, he continues to advance his injunctive relief claims related only to the moving of chairs and the allegedly excessive lighting. He does

not dispute the Defendants' arguments regarding the other issues, apparently abandoning those claims for preliminary injunctive relief. Additionally, the Court notes that no evidence or argument has been presented that Putnamville experienced rioting or increased violence in response to the allegedly "new" rules the administration imposed.

Regarding the chairs, Mr. Scuteri denies that the previous placement of chairs created a security risk. He also asserts that "guidelines established by the Federal Government" entitle every inmate to a chair, among other things. Dkt. 69-1 at 2. Mr. Scuteri does not provide a citation for such guidelines. He also states that there are only 80 chairs in the dayroom for 120 inmates to use, and although there are also 6 tables in the dayroom "[t]hey are used by people of more melanin toned skin than mine." *Id.* Further, Mr. Scuteri states he "has a spinal injury that remains untreated and requires a place to sit with back support." *Id.*

As for the lighting, Mr. Scuteri asserts "there is no reason to have enough light fixtures, pumping warehouse lighting into the sleeping areas of people 24 hours a day." *Id.* at 3. Also, "[w]hen it is DAYLIGHT OUTSIDE there is no need to have interior lights blazing at 2,016,000 . . . lumens in light energy," which Mr. Scuteri states is equivalent to staring at an arc welder. *Id.* Mr. Scuteri asserts that the excessive lighting causes him and other inmates headaches, sleep disruption, and other psychological issues.

## II. Discussion

### A. Preliminary Injunction Standard

"A preliminary injunction is an extraordinary equitable remedy that is available only when the movant shows clear need." *Turnell v. Centimark Corp.*, 796 F.3d 656, 661 (7th Cir. 2015). The plaintiff first must show that "(1) without this relief, [he] will suffer irreparable harm; (2) traditional legal remedies would be inadequate; and (3) [he] has some likelihood of prevailing on the merits of its claims." *Speech First, Inc. v. Killen*, 968 F.3d 628, 637 (7th Cir. 2020). The plaintiff bears the burden of proving each element by a preponderance of the evidence. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S.A., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008). If the plaintiff meets these threshold requirements, "the court then must weigh the harm the denial of the preliminary injunction would cause the plaintiff against the harm to the defendant if the court were to grant it." *Id.*

"A movant's showing of likelihood of success on the merits must be strong." *Tully v. Okeson*, 977 F.3d 608, 613 (7th Cir. 2020) (quotation marks omitted). A "better than negligible" likelihood of success is not enough. *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 762−63 (7th Cir. 2020). The precise likelihood of success required depends in part on the balance of harms: "the more likely the plaintiff is to win on the merits, the less the balance of harms needs to weigh in his favor, and vice versa." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020).

"Conditions of confinement must be severe to support an Eighth Amendment claim." *Sasso v. Galipeau*, No. 3:23-CV-510-CCB-JEM, 2024 WL

7

1483980, at *1 (N.D. Ind. Apr. 3, 2024). To state such a claim, an objective and subjective element must be satisfied. First, "the deprivation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). The Eighth Amendment protects prisoners only from conditions that "exceed contemporary bounds of decency of a mature, civilized society," *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992). On the subjective prong, the plaintiff must allege that the prison officials acted with deliberate indifference—they were subjectively aware of an excessive risk to an inmate's health or safety and consciously disregarded it. *Farmer*, 511 U.S. at 839.

    The Court also observes that "[p]rison administration is a task that has been committed to the responsibility of [the legislative and executive] branches, and separation of powers concerns counsel a policy of judicial restraint. Where a state penal system is involved, federal courts have additional reason to accord deference to the appropriate prison authorities." *Turner v. Safley*, 482 U.S. 78, 84–85 (1987) (cleaned up). And particularly where preliminary injunctive relief is concerned, "[p]rison officials have broad administrative and discretionary authority over the institutions they manage." *Westefer v. Neal,* 682 F.3d 679, 683 (7th Cir. 2012) (cleaned up). The Prison Litigation Reform Act reinforces this point when it states, "[p]reliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires

preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2).

### B. Analysis

The Court required expedited briefing and consideration of Mr. Scuteri's "emergency" preliminary injunction motions because of his representation that there were many new rules going into effect on November 1 that were likely to cause widespread discord and potential violence within Putnamville.[2] As it turns out, it's undisputed that there were only two substantive changes to long-existing rules at Putnamville, not fifteen as he alleged in his motions. And there is no evidence that widespread discord and violence has occurred or is likely to occur in response to these rule changes. Also, contrary to Mr. Scuteri's allegations, the rule changes were implemented after consultation between staff and inmates.

Of these two changes, only one is related to any of the claims set forth in Mr. Scuteri's his emergency injunction motions—the removal of chairs from

---

[2] In response to Mr. Scuteri's motions seeking preliminary injunctive relief, Magistrate Judge Garcia held two telephonic status conferences, dkts. 63, 66. Defendants filed their response on November 6, 2024, dkt. 60, and the Court gave Mr. Scuteri until December 3, 2024, to file a reply. *See* dkt. 63 (granting Mr. Scuteri seven days from November 26 to file a reply). That deadline was later extended to December 13. Dkt. 68. Mr. Scuteri filed his reply on December 11, dkt. 69, and approximately a month later filed two motions to strike materials contained in Defendants' response, dkts. 70 (January 7, 2025), 71 (January 13, 2025). Defendants filed a motion for leave to supplement their response or in the alterative to strike Plaintiff's motions to strike because they "potentially serve only to delay" the proceedings. Dkt. 75 at 3 ¶ 4. Mr. Scuteri's filings at dockets 70 and 71 are essentially supplemental reply briefs to Defendants' response. He gives no explanation why he filed these separate motions raising issues that could and should have been presented in his reply, or why the Court should modify the briefing schedule and further delay resolution of his motions for preliminary injunction. Therefore, the Court does not consider Mr. Scuteri's motions to strike, dkts. [70] and [71], in resolving his motions for preliminary injunction.

dorm spaces and into dayrooms. Although the Court has not yet screened Mr. Scuteri's complaint, it does not contain any allegations regarding inadequate seating. That alone supports denial of preliminary injunctive relief on that issue because it not tied to potential claims that might proceed in this action as currently pled. *See Benisek v. Lamone*, 585 U.S. 155, 161 (2018) ("[T]he purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." (cleaned up)); *see also DeBeers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945) ("A preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally."); *Pacific Radiation Oncology, LLC v. Queen's Medical Center*, 810 F.3d 631, 636 (9th Cir. 2015) (holding that absent a nexus between underlying claims and request for injunctive relief, district court has no authority to grant injunctive relief) (citing *DeBeers Consol. Mines*, 325 U.S. at 220).

Moreover, there is a lack of evidence that the allegedly inadequate seating violates the Eighth Amendment. Even if the Court were to accept that there is a federal regulation that would require more chairs in prisons than Putnamville currently has, the existence of a rule or regulation regarding a condition of confinement does not create an enforceable Eighth Amendment standard. "Section 1983 protects against constitutional violations, not violations of departmental regulation and practices." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 746 (7th Cir. 2017) (cleaned up). To the extent Mr. Scuteri claims to need a chair for medical reasons, he has not supported this claim or shown any

10

irreparable harm. *See* dkt. 59. Finally, although Mr. Scuteri contends that there is no actual security concern posed by the chairs, Defendants have adequately explained why they did present such concerns as previously configured. Mr. Scuteri's denial of those explanations is insufficient to warrant the Court interfering with Defendants' "broad administrative and discretionary authority" over Putnamville. *See Westefer,* 682 F.3d at 683.

Regarding Mr. Scuteri's claims about the lighting, the Court acknowledges that excessive illumination within a prison may in some cases support an Eighth Amendment conditions-of-confinement claim. *See Vasquez v. Frank*, 209 F. App'x 538 (7th Cir. 2006). There are, however, legitimate penological purposes for having adequate lighting within prisons for security purposes. *See, e.g., Chappell v. Mandeville*, 706 F.3d 1052, 1058 (9th Cir. 2013). And again, this preliminary injunction motion was based on an alleged change of policy regarding lighting. Mr. Scuteri does not point to anything in the changed policy that has had or will have a negative impact on the lighting situation within Putnamville.

Furthermore, it is possible there could be disputed issues of fact with respect to the lighting situation. But a dispute of fact is not enough to warrant the extraordinary remedy of a preliminary injunction. Rather, Mr. Scuteri bears the burden of showing entitlement to a preliminary injunction. There is no evidence, for instance, of what an adequate level of lighting would be and still be consistent with a prison's security needs. Mr. Scuteri suggests, in part, that interior lighting could be turned off during the daytime. But it is unclear that

11

daytime exterior light alone would be sufficient for safety and security purposes within the confines of prison walls.

In sum, Mr. Scuteri's evidence and allegations do not show a likelihood of success on the merits. Nor has he shown irreparable harm. Not only were there virtually no "new" rules, there is no evidence of actual or imminent rioting because of them. Even accepting as true that a reduction in or moving of chairs and alleged overuse of indoor lighting may cause some discomfort to Mr. Scuteri, there also is no indication that such harms would be likely to cause severe injury or death. Some level of discomfort is a fact of prison life that does not necessarily give rise to an Eighth Amendment claim, particularly one that must be addressed through a preliminary injunction. On balance, and giving necessary due deference to prison officials with respect to matters of safety and security, Mr. Scuteri has not met his burden of showing he is entitled to emergency injunctive relief.

### III. Dismissal of Case

On October 24, 2024, the Court issued an order to show cause directing Mr. Scuteri to respond by November 15, 2024, and either explain why this case should not be dismissed as duplicative of *Scuteri v. Indiana Department of Corrections et al.*, 2:24-cv-00316-JPH-MKK, or to voluntarily dismiss this case. Dkt. 41. On October 30, Mr. Scuteri responded by stating in part, "I agree with the Court, having 2 of the EXACT same cases is nonsensical. . . . So please consolidate these 2 cases or remove the one." Dkt. 51. In accordance with the Court's previous order and Mr. Scuteri's response thereto, the Court now directs

12

that this action be **dismissed without prejudice** as duplicative of 2:24-cv-00316-JPH-MKK. Final judgment will issue by separate order.

### IV. Conclusion

Defendants' motion to supplement is **GRANTED**. Dkt. [75]. Mr. Scuteri's motions to strike are **DENIED**. Dkts. [70] and [71]. Mr. Scuteri's motions for emergency injunctive relief, dkts. [44] and [58], are **DENIED** for the reasons above. This case is now also **DISMISSED WITHOUT PREJUDICE** as duplicative for the reasons above. The pending motions at dkts. [13], [14], [15], [47], [51], and [55], are **terminated**.

**SO ORDERED.**

Date: 1/29/2025

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email

MICHAEL SCUTERI
286882
PUTNAMVILLE - CF
PUTNAMVILLE CORRECTIONAL FACILITY
Electronic Service Participant – Court Only